**BUCKSNORT OIL CO., INC.**

v.

**NATIONAL CONVENIENCE STORES, INCORPORATED, Tom Reed, and Reed Oil Company, Inc.**

No. 3–84–0199.

United States District Court, M.D. Tennessee, Nashville Division.

March 30, 1984.

Barney Regen, Dickson, Tenn., for plaintiff.

Cliff Knowles, Nashville, Tenn., for defendants.

## MEMORANDUM AND ORDER

JOHN T. NIXON, District Judge.

This is an action for declaratory judgment of the rights and liabilities of the parties to a contract and several assignments and lease agreements. The action was originally commenced in the Circuit Court of Dickson, Tennessee and was subsequently removed on February 27, 1984 by the defendant National Convenience Stores (hereinafter NCS). On February 28, 1984, NCS sought a temporary restraining order. After a hearing, the parties agreed to maintain the status quo pending a hearing on the motion of NCS for a preliminary injunction. On March 8, 1984, this matter came on for consideration and at that time the plaintiff Bucksnort Oil Co., Inc. (hereinafter Bucksnort) asserted that this case be remanded. For the reasons that follow, this Court concludes that this case should be remanded to the Circuit Court of Dickson, Tennessee.

In its petition for removal, the defendant NCS asserts that this Court has original jurisdiction over this case based on diversity of citizenship under 28 U.S.C. § 1332 and is therefore removable under 28 U.S.C. § 1441(a), providing for the removal of any case in which the district court has original jurisdiction. NCS relies on diversity of citizenship for jurisdiction because the complaint shows that the plaintiff Bucksnort is a Tennessee corporation with its principal place of business in Dickson, Tennessee and the defendant NCS is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Houston, Texas. NCS recognizes that the plaintiff alleges that the defendants Tom Reed and Reed Oil Company, Inc. (hereinafter Reed Oil) are citizens and residents of the State of Ten-

nessee and that under 28 U.S.C. § 1441(b), a diversity action may be removed only if none of the defendants are citizens of the plaintiff's state. NCS contends that the defendants Reed and Reed Oil were fraudulently joined for the purpose of defeating diversity jurisdiction. The essence of the defendant NCS's argument is that removal based on diversity jurisdiction is proper because the non-diverse defendants—Reed and Reed Oil—were fraudulently joined and not "necessary" parties; consequently, their citizenship should be disregarded for diversity purposes.

The plaintiff maintains that this case should be remanded because the plaintiff and the defendants Reed and Reed Oil are citizens of Tennessee, thus there is no complete diversity for jurisdictional purposes. The plaintiff argues that the defendants Reed and Reed Oil are necessary parties to this case by virtue of TENN.CODE ANN. § 29–14–107, which requires that in a declaratory action all persons who have a claim or interest be made a party. Moreover, the plaintiff maintains that the defendants Reed and Reed Oil have an interest in the declaration of rights under the contracts at issue. It follows, according to the plaintiff, that the joinder of these non-diverse parties was neither fraudulent nor in bad faith.

The dispositive issue in the case is whether the joinder of the non-diverse defendants Reed and Reed Oil was fraudulent. An affirmative determination of this issue would create complete diversity between the plaintiff and NCS and permit removal of this case. *See, e.g., Mabray v. Velsicol Chemical Corp.,* 480 F.Supp. 1240 (W.D. Tenn.1979). A negative determination of this issue would result in a remand of this case, there being no complete diversity of citizenship for original jurisdiction under section 1441(a).

In aiding the Court's determination of whether joinder of the defendants Reed and Reed Oil was fraudulent, both NCS and Bucksnort have cited and relied upon the Supreme Court's decision in *Chicago, Rock Island & Pacific Railway Company v. Schwyhart,* 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (1913). In that case, the plaintiff, a railway company employee, sought to recover against the railway company and its employees for personal injuries allegedly caused by the railway company employees' negligence. A timely removal petition was filed by the defendant railway company, but was overruled because diversity of citizenship jurisdiction did not exist in that some of the defendants were citizens of the plaintiff's state. The removal petition, recognizing the lack of complete diversity, charged that joinder of the non-diverse parties was fraudulent for the purpose of defeating removal because, among other reasons, no cause of action was made against the non-diverse defendants. The case proceeded to trial in the state court and an adverse verdict and judgment entered against the defendants.

Before the Supreme Court, the defendant railway company argued that the state proceedings were void because removal was improperly denied. In affirming the denial of removal, Justice Holmes specifically addressed the railway company's contention that because no cause of action was stated against the non-diverse defendants, joinder of those defendants was fraudulent. In rejecting this argument, Justice Holmes reasoned that whether a cause of action was stated against the non-diverse defendants was a matter of state law; thus, the propriety of removal should be determined by whether, at the time removal was sought, the complaint indicated a real intention and a colorable ground to obtain a joint judgment. *Id.* at 194, 33 S.Ct. at 251. Consistent with Justice Holmes' decision in *Schwyhart,* Justice Van Devanter in *Chesapeake & Ohio Railway Company v. Cockrell,* 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914), held that in determining fraudulent joinder the assertion of that claim is not enough, it must appear from the record at the time of removal that "joinder is without right and made in bad faith." *Id.* at 152, 34 S.Ct. at 280.

 Subsequent to *Schwyhart* and *Cockrell,* federal courts have demanded that a party relying upon fraudulent joinder plead with particularity and support by clear and convincing evidence that joinder

of a non-diverse party was done with intent to prevent removal. *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964); *Saylor v. General Motors Corporation*, 416 F.Supp. 1173, 1176 (E.D.Ky.1976). The party asserting fraudulent joinder has a heavy burden of pleading, production and persuasion. Moreover, the standard of proof is no less substantial. In order to establish fraudulent joinder, the test is that there be absolutely *no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant under state law or that there is an outright fraud in the plaintiff's pleadings of jurisdictional facts. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). *See also Green v. Amerada Hess Corporation*, 707 F.2d 201, 205 (5th Cir.1983); *Charest v. Olin Corporation*, 542 F.Supp. 771, 775 (N.D.Ala.1982). *See generally*, Fed.Proc., L.Ed. § 69:21. The motive of the plaintiff in bringing an action sought to be removed against a non-diverse party is immaterial, *Siler v. Morgan Motor Co.*, 15 F.Supp. 468, 470 (E.D.Ky.1936), as long as the district court, after evaluating the allegations in the removal petition in the light most favorable to the plaintiff, determines that there is a possible or arguably valid state law cause of action alleged against the non-diverse defendant. If so, then joinder of the non-diverse defendant was not fraudulent, *B., Inc.*, 663 F.2d at 549–50, and the case must be remanded if diversity of citizenship is the sole ground upon which original federal jurisdiction is based.

In the present case, the issue presented is whether the plaintiff's allegation sets forth a possible valid state law cause of action against the non-diverse defendants Reed and Reed Oil, because there is no allegation of fraud in the plaintiff's pleadings of jurisdictional facts. In reviewing the plaintiff's complaint and exhibits incorporated therein, this Court should not and need not engage in a full in-depth review of the ultimate issues of substantive liability. *B., Inc.*, 663 F.2d at 551. Instead, in determining whether a valid state law claim has been asserted, this Court may engage in an abbreviated review of the record utilizing a "synoptic rather than microscopic" focus of the jurisdictional issue as opposed to "factual minutiae." *Id.* at 554. Only if the Court can conclude that there is no possibility that a valid state law claim is brought against the non-diverse defendants should the Court then find that joinder of those defendants is fraudulent and for the sole purpose of defeating removal.

Although the facts presented in this declaratory action are complicated, the Court will only engage in a cursory review of those facts necessary to resolve the jurisdictional issue. Fundamentally, the allegations surround the parties rights and liabilities pursuant to a gasoline supply contract.

It is alleged that the defendants Tom Reed and Reed Oil supplied gasoline to a number of convenience markets in Middle Tennessee operated by Super Drive-Ins (SDI) pursuant to a series of agreements from 1973 until 1981. In May 1981, Tom Reed, doing business as Reed Oil, entered into a gasoline supply agreement with SDI for the purpose of defining the rights and duties of Reed, Reed Oil and SDI and to protect Reed's existing franchise relations with Amoco. Complaint ¶ 13. Following the execution of the May 1981 agreement, NCS purchased the assets of SDI and took an assignment of the gasoline supply contract. NCS continued to purchase gasoline pursuant to the agreement from Reed, accepting primarily Amoco gasoline products. Subsequently, in September 1982 Reed and Reed Oil assigned its interest in the gasoline supply agreement to Bucksnort. It is alleged that prior to this assignment Tom Reed represented that no contractual prohibition existed prohibiting the delivery of non-Amoco products by Bucksnort. Complaint ¶ 18.

Bucksnort is a partnership controlled by Tom, Norma Sue, Randy and Michael Reed. The pleadings in the related case of *Amoco v. Reed Oil Company, Inc., Bucksnort Oil Co., Inc., Bucksnort Oil Company, a partnership, Tom J. Reed, Norma Sue Reed, Randy Reed and Michael Reed*, No. 3–83–0902 (M.D.Tenn.), reveal that Tom and Norma Sue Reed signed an unlimited guaranty securing the indebtedness of

Reed Oil. The *Amoco* case alleges that Reed Oil transferred its assets to Bucksnort whose principals are Randy and Michael Reed, the children of Tom and Norma Sue Reed.

This action ensued after Bucksnort was unable to deliver Amoco products to the defendant NCS and NCS served notice of intent to terminate the agreement. Bucksnort seeks a declaration of the rights of NCS, Tom Reed and Reed Oil relative to their duties arising from the various assignments and leases surrounding the gasoline supply contract. In short, the plaintiff Bucksnort as the assignee of the defendant Tom Reed, the sublessor, is asserting the rights of the Reed group, which consists of Tom Reed, his family, Reed Oil and Bucksnort. On the other hand, NCS as assignee of SDI, the sublessee, is asserting the rights of SDI.

In order to assert a valid declaratory claim against the defendants, it is essential that the plaintiff allege a justiciable controversy that is a dispute over some legal right, relation or interest between the plaintiff and defendant. 5 Wright & Miller, *Federal Practice & Procedure* 203 (1969). It is apparent to this Court, after construing the complaint in the light most favorable to the plaintiff, that an arguable or possible claim has been stated against the non-diverse defendants Tom Reed and Reed Oil under the various assignments and leases relative to the gasoline supply agreement. Proceeding under a state contract theory, the complaint seeks to enumerate and define the rights of the defendant Tom Reed and by virtue of an assignment the rights of the plaintiff Bucksnort. Declaration of those rights might reveal potential tort or contract liability against Tom Reed by Bucksnort. Although the Court is wary of the familial relationship of the Reed group, the Court cannot conclude that such relationship negates the assertion of a valid state law claim against the non-diverse defendants. The plaintiff's demand for relief seeking a declaration that the plaintiff and its predecessors in interest— Tom Reed and Reed Oil—have not materially breached the gasoline supply agreement is consistent with Bucksnort's interest resulting from the assignment from Tom Reed. Given the assignment to Bucksnort from Tom Reed and Reed Oil, it is not inconceivable for the plaintiff to include Reed and Reed Oil as defendants. Indeed, it is possible that these defendants may, by virtue of the declaratory judgment, be liable for incorrect or misleading representations to Bucksnort. Although both NCS and Bucksnort have referred to matters outside the record, this Court declines to consider such, having determined that possible valid state law declaratory claims have been asserted against the non-diverse defendants. Accordingly, the Court concludes that the plaintiff has set forth in the declaratory action complaint a real intention and a colorable ground to obtain a judgment against the non-diverse parties; their joinder was not fraudulent. Thus, diversity of citizenship does not exist for removal purposes. 28 U.S.C. § 1441(a).

It is therefore ORDERED that this case be remanded to the Circuit Court of Dickson, Tennessee.